IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE BRADY CENTER TO PREVENT GUN VIOLENCE,<br><br>    Plaintiff<br><br>vs.<br><br>U.S. DEPARTMENT OF JUSTICE<br><br>and<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>    Defendants. | Case No.  1:17-cv-02130 (RDM) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE AND
<u>STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS</u>**

Pursuant to Local Rule 7(h), Plaintiff, the Brady Center to Prevent Gun Violence ("Brady Center") submits this response to the Department of Justice's and Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") statement of material facts as to which there is no genuine issue.  The Brady Center also provides its Statement of Additional Undisputed Material Fact below.

1.    <u>ATF Assertion 1</u>:  By letter dated March 29, 2017, plaintiff made a Freedom of Information Act ("FOIA") request to the ATF, seeking certain communications related to "the January 20, 2017 White Paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations", known in this case as the "White Paper Request". Declaration of

Peter J. Chisholm ("Chisholm Decl."), attached, ¶ 3; Declaration of Sophia Y. Kil ("Kil Decl."), ¶ 3 & Ex. A.

**Brady Center's Response to Assertion 1: Not disputed that the Plaintiff submitted a FOIA request to the ATF, dated March 29, 2017, seeking certain communications related to "the January 20, 2017 White Paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations", known in this case as the "White Paper Request". The White Paper Request also sought documents other than communications related to the January 20, 2017 White Paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations."** *See* **ECF No. 1, at Ex. A (Oct. 16, 2017).**

2. ATF Assertion 2: On April 10, 2017, ATF received a request from the Chairman of the House of Representatives Committee on Oversight and Government Reform seeking information as part of their investigative oversight function, that included the same information pertaining to the White Paper as that sought by plaintiff. Chisolm Decl., ¶ 4.

**Brady Center's Response to Assertion 2: Not disputed.**

3. ATF Assertion 3: ATF performed a search for the records requested by the Committee, and located responsive records, which would have included the records requested by plaintiff. Id. at ¶¶ 5-9.

**Brady Center's Response to Assertion 3: Not disputed that a search was conducted and located responsive records.**

4. ATF Assertion 4: On February 9, 2018, ATF released 1134 pages of responsive information to plaintiff. Kil Decl., ¶ 6 & Ex. D.

**Brady Center's Response to Assertion 4: Not disputed.**

5. ATF Assertion 5: On March 12, 2018, ATF released 159 re-processed pages to

2

plaintiff.  Kil Decl., ¶ 7 & Ex. E.

**Brady Center's Response to Assertion 5**:  Not disputed.

6. <u>ATF Assertion 6</u>:  On March 16, 2018, ATF re-released five pages of documents to plaintiff.  Kil Decl., ¶ 9 & Ex. H.

**Brady Center's Response to Assertion 6**:  Not disputed.

7. <u>ATF Assertion 7</u>:  By letter dated May 23, 2018, ATF released a six-page document previously unreleased to plaintiff.  Kil Decl., ¶ 10 & Ex. I.

**Brady Center's Response to Assertion 7**:  Not disputed.

8. <u>ATF Assertion 8</u>:  By letter dated August 7, 2017, plaintiff requested certain information pertaining to ATF's regulatory oversight of federal firearms licensees, known in this case as the "Warning Letter Request".  Kil Decl., ¶ 11 & Ex. J.

**Brady Center's Response to Assertion 8**:  Not disputed.

9. <u>ATF Assertion 9</u>:  The processing of the Warning Letter Request is ongoing, and ATF is claiming Exemption 3 to redact certain information.  Kil Decl., ¶ 11.

**Brady Center's Response to Assertion 9**:  Not disputed.

10. <u>ATF Assertion 10</u>:  ATF invoked Exemption 3 of the FOIA to exempt from release information protected from disclosure by another statute.  In particular, ATF withheld information under Exemption 3 in conjunction with the Consolidated and Further Continuing Appropriations Act, 2012, P.L. 112-55, November 18, 2011, 125 Stat. 552.  Kil Decl., ¶¶ 14-20.

**Brady Center's Response to Assertion 10**:  Not disputed.

11. <u>ATF Assertion 11</u>:  ATF invoked Exemption 4 of the FOIA to withhold certain confidential commercial information voluntarily submitted to ATF during the course of an inspection of certain federal firearms licensees.  In particular, the withheld information consists

of inventory and sales information, distributor supply sources, and financial sales data, which if released, would cause competitive harm to the submitters, and would disclose information that the submitters do not customarily releases to the public.  Kil Decl., ¶¶ 21-23.

**Brady Center's Response to Assertion 11:  Disputed.  ATF Assertion No. 11 states a conclusion of law, not a statement of fact.  To the extent that the Brady Center is required to respond, the Brady Center does not dispute that the ATF has invoked Exemption 4 of the FOIA on the basis described.**

12. ATF Assertion 12:  ATF invoked Exemption 5 of the FOIA to protect certain information contained in inter or intra-agency memoranda, which is protected from mandatory disclosure by the deliberative process privilege and the attorney work-product doctrine.  More specifically, the information withheld consists of candid, predecisional opinions and recommendations of government officials preparing for the confirmation hearing of the Deputy Attorney General, addressing a briefing paper and Inspector General inquiry, preparing for a press interview and Congressional hearing, developing responses to Congressional inquiries, and comments on a predecisional version of the White Paper.  Certain information was also withheld under the attorney work-product doctrine to protect information created by attorneys within ATF's Office of Chief Counsel in connection with an on-going litigation matter involving armor piercing ammunition.  Kil Decl., ¶¶ 24-27.

**Brady Center's Response to Assertion 12:  Disputed.  ATF Assertion No. 12 states a conclusion of law, not a statement of fact.  To the extent that the Brady Center is required to respond, the Brady Center does not dispute that the ATF has invoked Exemption 5 of the FOIA on the basis described.**

13. ATF Assertion 13:  ATF invoked Exemption 6 of the FOIA to protect information

the release of which would constitute a clearly unwarranted invasion of personal privacy. The information withheld consists of personal information such as names and identifying information pertaining to federal law enforcement agents, except for high level officers, ATF employees, the names and identifying information of third parties and information relating to regulatory and criminal law enforcement cases of these third parties, and contact information of private citizens who contacted ATF. Kil Decl., ¶¶ 29-35. Release of this information could reasonably be expected to cause these individuals reputational harm, embarrassment, harassment, or possible reprisal, and would do little, if anything at all, to aid the public's understanding of the operations and activities of ATF. *Id.*

**Brady Center's Response to Assertion 13: Disputed. ATF Assertion No. 13 states a conclusion of law, not a statement of fact. To the extent that the Brady Center is required to respond, the Brady Center does not dispute that the ATF has invoked Exemption 6 of the FOIA on the basis described.**

14. <u>ATF Assertion 14</u>: All reasonably segregable information has been released to plaintiff. Kil Decl., ¶ 36.

**Brady Center's Response to Assertion 14: Disputed. ATF Assertion No. 14 states a conclusion of law, not a statement of fact. To the extent that the Brady Center is required to respond, the Brady Center disputes the assertion.**

STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

15. On February 6, 2017, the Washington Post reported that Acting Deputy Director Ronald Turk had written a proposal titled "Options to Reduce or Modify Firearms Regulations" ("White Paper"). As reported by the Post, the White Paper was dated January 20, 2017. *See* S.

Horwitz, "Senior ATF Official Proposes Loosening Gun Regulations," Wash. Post (Feb. 6, 2017) (attached as Ex. A. to the Decl. of Nooree Lee ("Lee Decl.")).

16. The Post reported that the White Paper included recommendations to remove restrictions on gun silencers, allow gun dealers to have more guns used in crimes traced to their stores before the federal government requires additional information from the dealer, and consider lifting the ban on imported assault weapons, among other things. *Id.*

17. On March 29, 2017, the Brady Center submitted a FOIA request ("the White Paper Request") to the ATF, seeking four categories of requested records:

> (1) All communications between ATF employees related to the January 20, 2017 White Paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations";
>
> (2) All communications between ATF employees and members of the Presidential Transition Team related to the January 20, 2017 White Paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations";
>
> (3) All communications between ATF employees and non-government employees, including but not limited to representatives from gun manufacturers or the National Rifle Association, related to the January 20, 2017 White Paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations"; and
>
> (4) All other documents, including drafts, related to the January 20, 2017 White Paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations."

ECF No. 1, at Ex. A (Oct. 16, 2017).

18. On April 4, 2017, Deputy Director Ronald Turk testified before the U.S. House of Representatives Committee on Oversight and Government Reform on several topics, including his January 20, 2017 position paper titled "Federal Firearm Regulations - Options to Reduce or Modify Firearms Regulations." *See* Hearing Before the House Committee on Oversight and Government Reform, Serial No. 115-21 (Apr. 4, 2017). During his testimony, Mr. Turk stated

that he does not "particularly have a position" on the issues raised in the White Paper and that he does not "necessarily recommend a position on that matter one way or the other for the agency." *Id.* at 64.

19. In response to an April 10, 2017 demand from the House Oversight Committee, Mr. Turk sent a letter providing additional information about the White Paper and its creation. *See* Turk Letter to J. Chaffetz (Apr. 24, 2017) (attached as Ex. B to Lee Decl.). He stated that he "asked several key members from the gun and explosives industries for feedback." *Id.* at 2. To this point, he confirmed that he provided copies to two staff members at the Department of Justice as well as "the National Shooting Sports Foundation, Mark Barnes & Associates, and the National Rifle Association's Institute for Legislative Action." *Id.* at 3. He also confirmed that he "had several conversations over the past year(s) with the NSSF, Mr. Barnes and others regarding matters discussed in [the] White Paper." *Id.*

20. In response to same April 10, 2017 demand, the ATF asserts that later that month it searched for documents and communications related to the White Paper. *See* ECF No. 16-1, Chisholm Decl. ¶¶ 5-8. The ATF's search was limited to searching custodial emails for the single term "white paper." *Id.* ¶ 7.

21. In response to this request, the ATF initially planned to search the records of "anyone else that the document was circulated to." *See* M. Bennett Email (April 13, 2018) (included in Ex. E to Lee Decl. at 870-872).

22. Before conducting its search, the ATF decided to limit its search to thirteen custodians. ECF No. 16-1, Chisholm Decl. ¶ 7. The electronic search of these individuals ATF emails identified "[r]oughly 1,900 pages," which were further reviewed and culled down. *Id.* ¶ 8.

23. In addition to the ATF's search of these thirteen custodians, Mr. Turk personally searched on his private/personal non-government email accounts for responsive documents. *See* Chisholm Decl. ¶ 6.

24. The ATF has failed to provide any details on the methods used by Mr. Turk during his self-collection of relevant documents or any instructions provided by the ATF to Mr. Turk relating to the collection of documents. *Id.*

25. Despite the White Paper FOIA being submitted on March 29, 2017 and the searches being conducted in April 2017, the ATF did not produce any documents until ordered to do so by the Court. *See* Minute Order dated Dec. 21, 2017. The ATF first released records in response to the White Paper FOIA in February 2018 and released additional records in March and May 2018. *See* ECF 16-2, Kil Decl. ¶¶ 6-7, 9-10.

26. On August 7, 2017, the Brady Center submitted a FOIA request to the ATF seeking records related to ATF correspondence with federal firearm licensees. *See* ECF No. 1, at Ex. B (Oct. 16, 2017). This FOIA request has been referred to as the Warning Letter FOIA Request.

27. The Warning Letter FOIA Request sought two discrete categories of requested records:

> (1) All warning letters, warning conference notices, and the underlying reports of violations and firearms inspection narrative reports, issued to federal firearms licensees from July 1, 2015 through June 30, 2017;

> (2) All notices of revocation of license and the accompanying ATF Form 4500s issued to federal firearms licensees from July 1, 2015 through June 30, 2017.

*Id.*

28. The Warning Letter FOIA Request extends to letters, reports, and notice issued by

the Agency and held within the Agency's control.  *Id.*

29. The ATF takes the position that the types of records required to be maintained by federal firearms licensees include:

- ATF Form 4473, Firearms Transaction Record,
- Acquisition and Disposition Log Books,
- Multiple Sales Reports,
- ATF Form 3310.11, FFL Theft & Stolen Firearms Records,
- ATF Form 5300.35, Brady Forms,
- Law enforcement certification letters,
- Record of approved variances, and
- ATF Forms 6 and 6a (importation) and supporting documentation.

*See* Kil Decl. ¶ 17.

30. The Warning Letter FOIA Request does not extend to the federal firearms licensee's records (that is, records required to be held by licensees).  *See* ECF No. 1, at Ex. B.

31. The Warning Letter FOIA Request does not extend to reports pulled from the Agency's Firearms Trace System ("eTrace") database used by law enforcement officials to submit firearm traces to the National Tracing Center.  *Id.*

32. Pursuant to the Court's direction, the ATF began producing documents in response to the Warning Letter FOIA Request in January 2018, and has made additional monthly productions in March and April 2018 (as well as other productions thereafter).  *See* Kil Decl. ¶ 11.

33. The ATF's productions in response to the Warning Letter FOIA Requests are comprised in large part by copies of ATF Form 5700.14 (Assignment and Report) or ATF E-

9

Form 5030 5 (Report of Violations). *See e.g.* Excerpts from the January 30 and March 9, 2018 Productions (attached hereto as Exs. C-D to Lee Decl.).

34. The copies of ATF Form 5700.14 (Assignment and Report) included in the productions include the assigned ATF officer's recommendation following a compliance review of federal fireman license holder (such as a firearms dealer). *Id.*

35. The copies of ATF Form 5700.14 (Assignment and Report) included in the productions are accompanied by copies of ATF E-Form 5030 5 (Report of Violations), which detail the violations identified during the course of the ATF inspection of the licensee as well as corrective actions to be taken (if any). *Id.*

36. The ATF's productions in response to the Warning Letter FOIA Requests do not include the types of records required to be maintained by federal firearms licensees. *See e.g. id.*; *see supra* ¶ 29.

37. The ATF's productions in response to the Warning Letter FOIA Requests do not contain reports pulled from the Agency's eTrace database. *See e.g.* Exs. C-D to Lee Decl.

38. The ATF's productions in response to the Warning Letter FOIA Requests contain repeated redactions to certain categories of information pursuant to FOIA Exemption 3 and Public Law 112-55 (125 Stat. 552). *See e.g.* Lee Decl., Ex. C at 6.

39. As part of its redactions, the ATF redacted the numbers of certain types of violations identified during the ATF inspections. For example, the first ATF Form 5700.14 produced in January 2018 redacted the total number of firearms missing after an ATF inventory. *See* Lee Decl., Ex. C at 3.

40. Many of the redactions relate to maintaining appropriate records but do not present the records themselves. For example, the first ATF E-Form 5030 5 produced in January

2018 noted the licensee's failure to obtain and/or furnish information required in each ATF Form 4473 and then redacted out the date, name, and nature of the error.  *Id.* at 6.

41.   Many of the redactions relate to the number of instances of such violation, without providing any additional information on the nature of the violations.  For example, the January production included an ATF E-Form 5030 5 noting "Failure to enter into a record each receipt and every disposition of individual firearms, [redacted] instances."  *Id.* at 21.

42.   Some of the redactions in the Warning Letter FOIA productions cite to both FOIA Exemption 3 and FOIA Exemption 6.  *See e.g. id.* at 6.

September 10, 2018

Respectfully Submitted,

/s/ Kevin T. Barnett
Kevin T. Barnett (D.C. Bar No. 1003410)
Alan Pemberton (D.C. Bar No. 367108)
Nooree Lee (D.C. Bar No. 1001687)
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-5430
kbarnett@cov.com

Jonathan E. Lowy (D.C. Bar No. 418654)
Joshua Scharff (D.C. Bar No. 999392)
Brady Center to Prevent Gun Violence
840 First Street NE Suite 400
Washington, DC 20002
(202) 370-8106
mgoetz@bradymail.org
*Attorneys for Plaintiff*