UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE BRADY CENTER TO PREVENT GUN VIOLENCE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 17-2130 (RDM)<br>Consolidated with 18-2643 (RDM) |

## **PLAINTIFF MOTION FOR A SCHEDULING ORDER**

Plaintiff, the Brady Center to Prevent Gun Violence ("Brady Center"), asks the Court to order Defendants to complete its production of records responsive to the Brady Center's August 2017 Freedom of Information Act Request. The Defendants, U.S. Department of Justice ("DOJ") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), disclosed the existence of an unproduced trove of responsive documents in October 2019 —days before it was due to complete its production—and represented to the Court in December 2019 that it expected to produce these documents within six months.  That has not happened.  The Defendants have already prolonged the process for over three years and now anticipate needing at least another 18 months to complete production.  This is unreasonable.  The Brady Center is seeking records related to gun control policy and enforcement at a time when gun violence and shootings have become an increasingly common occurrence and the possibility of real policy changes appears to being gaining traction with lawmakers. Accordingly, the Brady Center requests that the Court adopt a reasonable six-month production schedule.  The Defendants oppose this motion.

DC: 7344701-1

# BACKGROUND

## I. The Brady Center

The Brady Center is a 501(c)(3) nonprofit dedicated to creating a safer America by cutting gun deaths in half by 2025. The Combating Crime Guns Initiative ("CCGI") is one of the Brady Center's innovative programs designed to help meet this goal. This program works to prevent gun violence in impacted communities by increasing accountability and transparency of the suppliers of crime guns, namely irresponsible gun industry actors who prioritize profit over public safety. A key component of the CCGI is educating community members, leaders, and law enforcement about the importance of a supply-side approach to combating gun violence, which includes robust and effective government oversight of the gun industry. The Brady Center's Enhanced Inspections Initiative is a subcomponent of the CCGI that seeks to use data analytics to identify and reform problematic gun dealers by providing state and local authorities with the tools necessary to optimize their gun dealer inspection processes.

The Brady Center will use the requested information to further the goals of the Combating Crime Guns Initiative.  The Brady Center is using the partial set of released inspection reports to educate the public about gun industry misconduct that puts the public safety at risk, as well as the shortfalls in the federal oversight system that is supposed to prevent such behavior. Moreover, the information obtained from the ATF in this FOIA litigation is a critical input into the data analytics model employed by the Brady Center's Enhanced Inspections Initiative, which allows state and local authorities to focus their limited resources on dealers who are likely to be violating the law.

## II. The ATF Has Repeatedly Delayed Producing Responsive Records

In August 2017, the Brady Center filed a FOIA Request seeking records about ATF's inspections of federal firearms licensees from July 1, 2015 to June 30, 2017, which we have

called the First Warning Letter Request.  ECF No. 1, Complaint, Ex. B.  After no response to its First Warning Letter Request, the Brady Center filed this lawsuit to compel ATF to release the identified records.[1]  *See generally id.*  After an initial status conference, the Court ordered ATF to release at least 750 pages per month.  Minute Order (Mar. 13, 2018).

During the March 2018 status conference, the Court encouraged the Brady Center to come up with creative ideas to resolve this litigation promptly to ameliorate the delays caused by the Defendants' limited available resources.  In response, the Brady Center asked the Court to consider partial summary judgment motions on the pervasive Exemption 3 redactions that appeared on nearly every page of the ATF's productions.  ECF No. 13, Motion for Scheduling Order (May 25, 2018).  The Court agreed.  Minute Order (June 5, 2018).  The parties cross moved for summary judgment on both the search and redactions in the White Paper request and on the narrow issue of Exemption 3 redactions in the First Warning Letter Request.

While the summary judgment motions were pending, the Brady Center asked the ATF about the anticipated completion date for the First Warning Letter production.  After months of slipped target dates, the parties negotiated a compromise.  ATF would prioritize processing the Brady Center's First Warning Letter production over other Brady Center FOIA requests and complete processing and delivery of the responsive records by November 1, 2019.  *See* ECF No. 36 (Oct. 31, 2019) (detailing the parties' agreement).

---

[1] The 2017 Complaint also addressed records about a white paper drafted by Acting Director Ronald Turk, which we have called the White Paper Request.  *See* ECF No. 1, Complaint, Ex. A.  Later, the Brady Center filed a lawsuit regarding inspection reports from July 1, 2017 until present, which was consolidated with the earlier lawsuit.  The ATF has completed its response to the White Paper FOIA and, since December 2019, has been producing 750 pages per month in response to the Second Warning Letter FOIA.

Three days before that deadline, however, the ATF informed the Brady Center that the ATF had identified additional responsive records—documents called "Firearms Narrative Reports" that are linked to each inspection—that it could not release by November 1, 2019. *Id.* at 2-3.  The ATF identified these overlooked records as a result of a parallel Congressional oversight request which requested documents being produced here. *Id.* at 3.  The ATF explained to the Court that its mistake occurred because the ATF deviated from its normal procedure for processing FFL records and decided to pull records from its NSPECT record system rather than rely on the Firearms Licensing Center. *Id.* at 3.

Because of this mistake, the parties agreed that "ATF would produce the previously overlooked [N]arrative [R]eports on the same schedule on which it was releasing those records to Congress." ECF No. 37, Joint Status Report (Dec. 5, 2019).  This agreement depended on ATF's representations to the Court that the ATF had assigned nine additional employees to the Disclosure Division from various field offices to pull the responsive Narrative Reports and assist in the redaction of those documents on a part-time basis. ECF No. 36, Joint Status Report (Oct. 31, 2019) at 4.  With this added manpower, the ATF stated that "the processing should be faster," *id.* at 4, and that "although [it] could not provide an estimate, the parties . . . expect that production to take *no more than 6 months*," in other words, by June 5, 2020.  *See* ECF No. 37, Joint Status Report (Dec. 5, 2019) (emphasis added).

But that production schedule never materialized:  the ATF released only 1,756 pages during the six months in which it said it expected to release all 22,000 pages.  After repeated inquiries about the status of the Narrative Report productions, the parties agreed to re-visit the production schedule if the ATF had made no more productions to Congress by May 15, 2020.

- 4 -

*See* ECF No. 40, Joint Status Report (March 31, 2020).  To the Brady Center's knowledge, the ATF has made no additional productions to Congress.

In May 2020, the ATF rejected a proposal by the Brady Center to complete production within six months and started making monthly productions of Narrative Reports in reverse chronological order of the prior First Warning Letter productions.[2]  Under this schedule, the ATF will not complete its production until February 2022.[3]

## ARGUMENT

The Brady Center proposes a revised six-month production schedule for the remaining records responsive to the First Warning Letter request in lieu of the ATF's 18-month schedule.  The Brady Center has already waited almost three years for access to these public records and the end continues to recede into the future.  As a result of this delay, the Brady Center has been harmed and another year and half will compound that injury.  As the data gets older, its usefulness becomes more limited.  In addition, the slow timing prevents the Brady Center from fully educating the public about federal oversight of the gun industry at a consequential time in the country's history as it debates gun violence prevention measures.  The current schedule also violates both the spirit and letter of the parties' August 2019 and December 2019 agreements to bring this aging FOIA request to an end.

---

[2]    This means that ATF first released the Narrative Reports associated with the First Warning Letter documents that it had released in December 2019.  Next, the ATF released the Narrative Reports associated with its November 2019 release, and so on.

[3]    At the same time, the Brady Center proposed moving this litigation forward by filing motions for summary judgment on the documents identified in the Agency's representative *Vaughn* Index, which explained the basis for the ATF's redacting information on 1000 pages identified by the Brady Center.  *See* ECF No. 42, Joint Status Report (May 11, 2020).  The ATF disagreed.  *Id.*  The Court ruled that a second round of cross-motions for summary judgment was premature while ATF's review and production of records is ongoing.  *See* Minute Order (June 9, 2020).

In its place, the Brady Center asks that the ATF adopt a six-month production schedule. This schedule considers the ATF's resources, while ameliorating much of the harm caused by the delay. Indeed, in December, the ATF represented to the Court that it expected the remaining First Warning Letter releases to take six months. There is no reason to think that almost nine months later, the ATF cannot meet that same schedule.

## I. The Current Production Schedule Irreparably Harms the Brady Center

The Brady Center will be irreparably harmed by a continued delay. The ATF's 18-month schedule ensures that the Brady Center will not have access to a full set of records for more than 5 years after it submitted its FOIA request. That means the information will likely be outdated by the time they can be analyzed. As the D.C. Circuit has emphasized, FOIA production should be expedited to the extent feasible because "stale information is of little value[.]" *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 778 (D.C. Cir. 2018) (quoting *Payne Enters. Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)).

Without receiving these records promptly, the Brady Center's ability to participate in the national debate over gun violence will be impaired. Courts have long recognized that information "the non-disclosure of information to which a plaintiff is entitled, under certain circumstances itself constitutes an irreparable harm; specifically, where the information is highly relevant to an ongoing and highly public matter." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 319 (D.D.C. 2017), *aff'd on other grounds*, 878 F.3d 371 (D.C. Cir. 2017).

Although usually arising in the context of preliminary injunctions, these observations apply equally here as the ATF's delays have created a critical need for the unreleased records. Gun violence remains a prominent public issue that is debated in Congress, on the campaign trail, and by state legislatures across the country. ATF's oversight of firearms dealers is "highly

relevant to an ongoing and highly public matter." *EPIC v. Presidential Advisory Comm'n*, 266 F. Supp. 3d at 319.  The Brady Center intends to use the full set of records to educate the public about this issue as the country faces consequential elections that will impact the future of federal and state gun violence prevention policies.  *Protect Democracy Project*, 263 F. Supp. 3d 293, 300 (D.D.C. 2017) (quoting *Elec. Frontier Found. v. Office of Dir. of Nat'l Intelligence*, 2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007)) ("[o]ngoing public and congressional debates about issues of vital national importance cannot be restarted or wound back.'").

The public interest in these records is shown by the fact that even the partial set of documents produced has already garnered national attention. The New York Times highlighted the ATF's limited inspections and lack of significant repercussions for FFL's who repeated violate federal laws.  A. Watkins, "When Guns Are Sold Illegally, ATF Is Lenient on Punishment," N.Y. TIMES (June 3, 2018).  Likewise, Congress has shown interest in the records at issue – and even demanded the ATF turn over documents released in this litigation.[4]  *See* ECF No. 36, Joint Status Report (Oct. 31, 2019) at 4.  The full set of records will be of even greater interest to the media and Congress.

For these reasons, the Brady Center is being continuously harmed the longer the ATF delays releasing the full production set.

## II. The Current Production Schedule Violates the Letter and Spirit of the Parties' Agreements

The ATF's production schedule conflicts with the parties' August 2019 and December 2019 agreements.  In August 2019, the Brady Center willingly let ATF delay releasing records

---

[4] For more information about the Congressional probe, see Rachel Frazin, "House Oversight Committee to Examine Role of Licensed Gun Dealers," THE HILL (Aug. 9, 2019) (available at https://thehill.com/homenews/house/456858-house-oversight-committee-starts-gun-violence-probe).

responsive to other Brady Center FOIA requests not at issue in exchange for the ATF's prioritization of the First Warning Letter FOIA Request. After establishing more lenient deadlines for several other FOIA requests, the ATF announced that it could not meet the November 1, 2019 agreed completion date for the supposedly prioritized request.

This required that parties to reach a new agreement. In December 2019, the Brady Center accepted a new compromise where the ATF committed to produce records to the Brady Center at the same time it produced records in response to a Congressional oversight request using additional personnel resources. But again, the promised resources never materialized and months passed without progress.

Now rather than reach an agreed on production schedule, the ATF unilaterally announced it would adopt a schedule that pushes out completion for 18 months. That is unreasonable. While the Brady Center understands that ATF does not have unlimited resources, this unilateral extension falls far short of the agency's previous estimates of its ability to comply, and is entitled to little deference. The Brady Center should not need to wait until 2022 for the ATF to complete its response to the First Warning Letter Request that it submitted in 2017. This is a far cry from the D.C. Circuit's mandate that agencies produce documents in "days or a few weeks . . . not months or years." *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

In addition, the ATF's elongated production schedule has ripple effects. For example, the Court's recent order requiring that the Exemption 3 issues be briefed after the completion of initial record production makes it more necessary to achieve a reasonable production rate. If that production is not accelerated, it will likely be sometime in late 2023 before the Court resolves

the Brady Center's 2017 FOIA request. Six years is too long for requesters to wait "to learn what their government is up to." *NARA v. Favish*, 541 U.S. 157, 171-72 (2004).

On the other hand, the Brady Center's proposed schedule to complete the First Warning Letter productions within six months is reasonable. The Agency itself suggested almost nine months ago in December 2019 that six months was a reasonable estimate of how long it would need to complete these productions. *See* ECF No. 37, Joint Status Report (Dec. 5, 2019).

## CONCLUSION

For these reasons, the Brady Center asks the Court to order that the ATF make reasonably sized monthly productions of the missing Narrative Reports and complete its production of all documents responsive to the First Warning Letter request within six months.

Dated: July 24, 2020                                Respectfully submitted,

/s/ Kevin T. Barnett                          .
Kevin T. Barnett (D.C. Bar No. 1003410)
Alan Pemberton (D.C. Bar No. 367108)
Nooree Lee (D.C. Bar No. 1001687)
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-5430
kbarnett@cov.com

Jonathan E. Lowy (D.C. Bar No. 418654)
Joshua Scharff (D.C. Bar No. 999392)
Brady Center to Prevent Gun Violence
840 First Street NE Suite 400
Washington, DC 20002
(202) 370-8105
jscharff@bradymail.org

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE BRADY CENTER TO PREVENT GUN VIOLENCE,<br><br>      Plaintiff<br><br>      v.<br><br>U.S. DEPARTMENT OF JUSTICE<br><br>      and<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>      Defendants. | Civil Action No.  17-2130 (RDM)<br>Consolidated with 18-2643 (RDM) |

**PROPOSED ORDER**

UPON CONSIDERATION of Plaintiff's Motion for a Scheduling Order, and the entire record in this case, it is hereby

ORDERED that for the reasons set forth in the Plaintiff's motion, the motion for a scheduling order is granted; and it is further

ORDERED that the Defendants shall make reasonable monthly productions of records responsive to the Plaintiff's August 2017 Freedom of Information Act request; and it is further

ORDERED that the Defendants must complete its production and release all records responsive to Plaintiff's August 2017 Freedom of Information Act request no later than six months from the date of this Order.

_____
Randolph D. Moss
UNITED STATES DISTRICT JUDGE