UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE BRADY CENTER TO PREVENT GUN VIOLENCE, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br> Defendants. | Civil Action No. 17-2130 (RDM) <br> Consolidated with 18-2643 (RDM) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A SCHEDULING ORDER

These consolidated cases pertain to (1) a white paper drafted by a senior official of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") (the "White Paper Request") and ATF's inspections of federally-licensed gun dealers from July 1, 2015 to June 30, 2017 ("First Warning Letter Request"), which is the subject of Civil Action No. 17-2130; and (2) ATF's inspections of federally-licensed gun dealers from July 1, 2017 to the present ("Second Warning Letter Request"), which is the subject of Civil Action No. 18-2643.

In Plaintiff's Motion for a Scheduling Order (ECF No. 45), Plaintiff essentially request that the Court amend its March 13, 2018, oral Order by requiring ATF to produce more than the 750 pages per month that are responsive to Plaintiff's First Letter Warning Request. Specifically, Plaintiff requests production of all Firearm Narrative Reports[1] responsive to that request within six months.

---

[1] The term "Firearm Narrative Reports" means a document prepared by an ATF Industry Operation Investigator that, generally speaking, "describes the investigative activities performed, the findings, the corrective actions taken, and the recommendation(s) for any further action." Siple Decl. ¶ 8.

As explained in more detail below, ATF requests that the Court deny Plaintiff's request for four reasons. First, Plaintiff simply rehashes arguments this Court has rejected in entering the 750 pages per month production schedule. Second, Plaintiff did not request expedited processing in its First Warning Letter Request. Third, Plaintiff fails to provide evidence to support its conclusory assertion of irreparable harm. Fourth, ATF has expended its limited resources attempting to comply with Plaintiff's request during this litigation for production of the Firearm Narrative Reports in question sooner than 750 pages per month and cannot do more without prioritizing Plaintiff's request to the detriment of other requestors. Accordingly, ATF respectfully requests that the Court deny Plaintiff's motion.

## BACKGROUND

On March 13, 2018, the Court ordered ATF to produce 750 pages per month. *See* Mar. 23, 2018 Min. Entry for Proceedings Held Before Judge Randolph D. Moss ("Mar. 13, 2018 Min. Entry"). ATF has since processed all pages responsive to Plaintiff's First Warning Letter Request in November 2019, except for 20,000 pages of Firearm Narrative Reports; commenced producing 750 pages per month in response to Plaintiff's Second Warning Letter Request in December 2019; and commenced processing 750 pages of the First Narrative Reports per month in May 2020. *See* Siple Decl. ¶ 5; Pl.'s Mot. at 1.

ATF did not recognize that it mistakenly excluded the Firearm Narrative Reports from its processing and production until October 2019, when it identified the documents as a result of a parallel Congressional Oversight inquiry. Siple Decl. ¶¶ 7-9. The parties represented in their December 5, 2019, Joint Status Report (ECF No. 37), that "[a]lthough ATF could not provide an estimate [of when it would produce all the Firearm Narrative Reports], the parties hope and expect that production to take no more than 6 months." *Id*. at 2. ATF, however, was unable to complete

its production of the Firearm Narrative Reports responsive to the First Warning Letter Request by June 2020 because the additional resources it obtained to assist with the Congressional inquiry (i.e., detailees) have been unable to process records as quickly as hoped for because of a lack Freedom of Information Act ("FOIA") experience. Siple Decl. ¶¶ 10-11.

Nevertheless, on July 24, 2020, Plaintiff filed its instant motion requesting that the Court order Defendants to complete production of the Firearm Narrative Reports responsive to its First Warning Letter Requests within six months for two reasons: (1) Plaintiff claims that a later production will irreparably harm its ability to participate in the national debate about gun violence; and (2) Plaintiff claims that a later production schedule conflicts with the parties' August 2019 and December 2019 agreements. *See generally*, Pl.'s Mot.

## ARGUMENT

### I. Plaintiff Fails to Provide a Reason for the Court to Revisit its Ruling on a Processing Rate.

As an initial matter, the parties have already fought for and obtained the Court's ruling on the processing rate for records responsive to Plaintiff's First Warning Letter Request. *See* Mar. 2, 2018, Joint Status Report (ECF No. 12) at 2-3 (where Plaintiff requests that the Court order ATF to produce all documents responsive to its First Warning Letter Request by April 16, 2018 to resolve this matter expeditiously in light of "gun violence prevention and policy matters [being] at the forefront of public discourse and politics"); Mar. 13, 2018 Min. Entry ("Defendant ATF shall produce on a rolling basis 750 pages of records per month"). ATF has produced more than 1,000 pages per month of the First Narrative Reports since May 2020. *See* Siple Decl. ¶ 5. Plaintiff's claim that it "will be irreparably harmed by a continued delay" in production of the First Narrative Reports in question because "[w]ithout receiving these records promptly, [its] ability to participate in the national debate over gun violence will be impaired," Pl.'s Mot. at 6, simply rehashes its

argument previously raised before the Court and, as such, provides no basis for reconsideration of the Court's ruling. *See Capitol Sprinkler Inspection, Inc. v. Guest Servs.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (a district court properly exercises its discretion to deny a request for reconsideration of arguments previously considered and rejected on the merits).

**II.     Plaintiff's Request for Expedited Processing is Barred by Plaintiff's Failure to Request Expedited Processing at the Administrative Level.**

Even if Plaintiff's argument were "new," the Court should still reject it because Plaintiff did not request expedited processing or identify harm from delayed receipt of records in its First Warning Letter Request. *See* Compl. Ex. B (ECF No. 1-3). Plaintiff essentially attempts to do so now by way of its motion. However, "[b]ecause there has been no request for expediting the processing before the relevant [agency] in this matter, there is no agency action for this Court to review with respect to expedited processing." *Freedom Watch v. BLM*, Civ. A. No. 16-2320 (CKK), 2017 U.S. Dist. LEXIS 73458, at *7 (D.D.C. May 15, 2017) (stating that "the FOIA statute indicates that judicial review in this context applies solely to '[a]gency action to deny or affirm denial of a request for expedited processing . . . and failure by an agency to respond in a timely manner to such a request[.]'") (quoting 5 U.S.C. § 552(a)(6)(E)(iii)).

**III.    Plaintiff Fails to Establish That it Will Experience Irreparable Harm By ATF Producing Records Consistent with the Court's March 13, 2018 Oral Ruling.**

"Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well[-]known and indisputable principles to guide them in the determination of whether this requirement has been met." *Allied Progress v. Consumer Fin. Prot. Bureau*, Civ. A. No. 17-686 (CKK), 2017 WL 1750263, at *5, 2017 U.S. Dist. LEXIS 67889, at *16-17 (D.D.C. May 4, 2017) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "Chief among them is that 'the injury must be both certain and great; it must be actual and

not theoretical.'" *Allied Progress*, 2017 WL 1750263, at *5, 2017 U.S. Dist. LEXIS 67889, at *17 (quoting *Wisc. Gas Cov.*, 758 F.2d at 674). Plaintiff, however, has not demonstrated that it will experience an injury that is "great" and "actual."

To be sure, "a movant's general interest in timely processing of FOIA requests may be sufficient to establish irreparable harm if the information sought is 'time-sensitive.'" *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014) (quoting *Judicial Watch, Inc. v. DHS*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007)). But Plaintiff only provides the conclusory statement that its "ability to participate in the national debate over gun violence will be impaired" if the Court does not order ATF to produce the Firearm Narrative Reports responsive to the First Warning Letter Requests within six months. Pl.'s Mot. at 6. Such conclusory statements without any evidentiary support are insufficient to demonstrate irreparable harm. *See Sai*, 54 F. Supp. 3d at 11 (declining to find irreparable harm in part because the plaintiff offered conclusory statements without demonstrating that the requested information would be "vital to any current and ongoing debate").

Plaintiff's reliance on *Judicial Watch, Inc. v. Department of Homeland Security*, 895 F.3d 770 (D.C. Cir. 2018) and *EPIC v. Presidential Advisory Commission on Election Integrity*, 266 F. Supp.3d 297, 319 (D.D.C. 2017) to demonstrate irreparable harm, Pl.'s Mot. at 6, is misplaced as Plaintiff only cites a general proposition from those cases devoid of any context. Indeed, the former case explains that "a plaintiff states a plausible policy or practice claim . . . by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Judicial Watch*, 895 F.3d at 780. To do so, "the plaintiff must alleged a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future." *Id*. Plaintiff has not made any

such allegations in this case. Nor could it as ATF has produced records in accord with the Court-ordered production schedule.

*EPIC* concerned a request by the plaintiff for "injunctive relief prohibiting [the d]efendants from 'collecting voter roll data from states and state election officials' and directing [the d]efendants to 'delete and disgorge any voter roll data already collected or . . . received." *Elec. Privacy Info. Ctr.*, 266 F. Supp. 3d at 301. That is likewise not at issue here.

### IV.     ATF's Limited Resources Preclude it From Producing Records at a Quicker Pace.

Plaintiff's claim that the Court should order ATF to produce the first warning letters within six months because the current schedule "conflicts with the parties' August 2019 and December 2019 agreements," Pl.'s Mot. at 7, disregards unexpected factual develops that have delayed ATF's processing. ATF initially believed that it could complete processing of the records responsive to the First Warning Letter Requests by November 1, 2019, prior to realizing that it mistakenly omitted from processing 20,000 pages of Firearm Narrative Reports responsive to that request. *See* Oct. 31, 2019 Joint Status Report (ECF No. 36) (stating that "[o]n October 28, 2019, defendants informed [Plaintiff] that additional responsive records were identified [as a part of a Congressional Oversight request] that could not be released by November 1, 2019"). In December 2019, the ATF committed to producing the Firearm Narrative Reports on schedule parallel to its response to a Congressional oversight request, *see* Dec. 5, 2019 Joint Status Report (ECF No. 37 at 2), and has maintained that commitment, *see* Siple Decl. ¶ 11.

Unfortunately, ATF cannot produce the narrative reports responsive to the First Warning Letter Requests at a quicker pace. In an effort to do so, ATF's Information Privacy and Governance Division—the division responsible for processing FOIA requests—obtained detailees to assist with the Congressional inquiry. *Id.* ¶ 10. The detailees, however, have no FOIA experience, which

has lessened the intended benefit because ATF senior processors have had to ultimately redo much of the work performed by the individuals without such experience. *Id.* ¶ 10.

Other FOIA requests have also occupied ATF's time. "ATF began this fiscal year with a backlog of approximately 1,100 requests" and, in the last ten months, "has processed nearly 1,300 FOIA requests." Siple Decl. ¶ 3. Nevertheless, as of today, ATF still "has approximately 1,000 requests outstanding." *Id.* ATF has experienced challenges to reduce this backlog, in part, because of the impact the COVID-19 pandemic has had on its FOIA operations. *Id.* ¶ 13. The challenges to reduce [ATF's] pending request backlog along with the size and complexity of many of these requests, like Plaintiff's request, has completely taxed [ATF's] resources." *Id.* ¶ 12. "Diverting additional FOIA assets to this litigation will only delay responses to other requestors and likely result in further litigation elsewhere." *Id.*

At bottom, ATF has expended significant resources on processing Plaintiff's FOIA requests. ATF has either received or had pending 43 separate FOIA requests from Plaintiff since Plaintiff filed its lawsuit pertaining the First Warning Letter Request on October 16, 2017 and successfully closed 31 of those requests. Siple Decl. ¶ 4. This has resulted in ATF providing Plaintiff "roughly 40,000 pages of material responsive to their numerous FOIA requests (litigated and non-litigated)." *Id.* ¶ 12. And, in this case, ATF has provided Plaintiff with "approximately 28,200 pages" and "made every effort to exceed the monthly mandate of 750 pages ordered by the Court and will continue in this manner." *Id.* ¶¶ 5, 12. Accordingly, Defendants respectfully request that the Court decline Plaintiff's invitation to "'monopolize finite resources[,]'" *Negley v. Dep't of Justice*, 305 F. Supp. 3d 36, 46 (D.D.C. 2018) (quoting *Nat'l Sec. Counselors v. Dep't of Justice*, 848 F.3d 467, 471-72 (D.C. Cir. 2017)) by granting its request.

**CONCLUSION**

For the foregoing reasons, ATF respectfully requests that this Court deny Plaintiff's Motion for a Scheduling Order.

Dated: July 30, 2020
       Washington, DC

    Respectfully submitted,

    MICHAEL R. SHERWIN
    Acting United States Attorney

    DANIEL F. VAN HORN, D.C. Bar #924092
    Chief, Civil Division

    By:    /s/ *Michael A. Tilghman II*
    MICHAEL A. TILGHMAN II
    D.C. Bar #988441
    Assistant United States Attorney
    555 Fourth Street, N.W.
    Washington, D.C. 20530
    (202)252-7113
    Michael.Tilghman@usdoj.gov

*Attorneys for the United States of America*