UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE BRADY CENTER TO PREVENT GUN VIOLENCE,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>        Defendants. | Civil Action No. 17-2130 (RDM)<br>Consolidated with 18-2643 (RDM) |

**DECLARATION OF ADAM C. SIPLE,**
**CHIEF, INFORMATION AND PRIVACY GOVERNANCE DIVISION,**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**

I, Adam C. Siple, do hereby declare and say:

1. I am the Chief of the Information and Privacy Governance Division at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Department of Justice (the "Department"). In this capacity, I am responsible for all records requests made of ATF under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a. I am also responsible for all requests referred to ATF from other agencies that have located ATF originated documents in their records while processing their FOIA and PA requests.

2. I declare that the statements made herein are based on knowledge acquired by me through the performance of my official duties. I am familiar with the procedures followed by this office in responding to the three FOIA requests made by Mr. William Barnett, on behalf of The Brady Center to Prevent Gun Violence, and other requests.

**Information and Privacy Governance Division Workload**

3. ATF has one of the largest FOIA programs within the Department. ATF typically receives on average 1,450 FOIA and PA requests each year. This fiscal year looks to be no different, as ATF has already received over 1,000 new FOIA requests since October 1, 2020. Notably, ATF began this fiscal year with a backlog of approximately 1,100 requests. In order to respond to FOIA requests, ATF has 15 full-time employees or contractors assigned to the Information and Privacy Governance Division. The Bureau has processed nearly 1,300 FOIA requests within the last ten months. As of today's date, it has approximately 1,000 requests outstanding. And ATF has seen a significant uptick in the number of FOIA requests in recent weeks as a result public interest in the federal law enforcement activity in response to civil unrest throughout the nation.

**Plaintiff's FOIA Requests Outside of this Litigation**

4. Plaintiff, or their representatives, have filed an extraordinary amount of FOIA requests with ATF. Since October 16, 2017, the date this underlying action was filed, ATF has either received or had pending 43 separate FOIA requests from Plaintiff. This does not include the four FOIA requests Plaintiff has litigated during that period. Of the 43 non-litigated FOIA requests, the Information and Privacy Governance Division has successfully responded to and closed 31. Through the 31 responses, Plaintiff has received over 11,500 pages. Again, this is material produced outside of litigation. The remaining 12 open FOIA requests are all in various stages of processing, one of which has an agreed upon rolling monthly production of 400 pages. I estimate that the 12 current open FOIA requests, outside of litigation, implicate at least 10,000 responsive pages.

## Processing Efforts in This Case

5.      The three separate FOIA requests at issue in this case are generally referred to as the "White Paper," "Warning Letter #1," and "Warning Letter #2" requests. To date ATF has made the following monthly disclosures:

| Date | Pages | Material |
|---|---:|---|
| January 30, 2018 | 334 | Warning Letter #1 |
| February 9, 2018 | 1,134 | White Paper |
| March 9, 2018 | 491 | Warning Letter #1 |
| April 9, 2018 | 764 | Warning Letter #1 |
| May 9, 2018 | 759 | Warning Letter #1 |
| June 9, 2018 | 768 | Warning Letter #1 |
| July 9, 2018 | 775 | Warning Letter #1 |
| August 9, 2018 | 752 | Warning Letter #1 |
| September 9, 2018 | 764 | Warning Letter #1 |
| October 9, 2018 | 750 | Warning Letter #1 |
| November 9, 2018 | 771 | Warning Letter #1 |
| December 9, 2018 | 750 | Warning Letter #1 |
| February 11, 2019 | 750 | Warning Letter #1 |
| March 11, 2019 | 757 | Warning Letter #1 |
| April 9, 2019 | 753 | Warning Letter #1 |
| May 9, 2019 | 752 | Warning Letter #1 |
| June 10, 2019 | 756 | Warning Letter #1 |
| August 9, 2019 | 784 | Warning Letter #1 |
| September 9, 2019 | 755 | Warning Letter #1 |
| October 9, 2019 | 1225 | Warning Letter #1 |
| November 1, 2019 | 1422 | Warning Letter #1 |
| December 3, 2019 | 799 | Warning Letter #2 |
| January 3, 2020 | 751 | Warning Letter #2 |
| January 28, 2020 | 750 | Warning Letter #2 |
| February 3, 2020 | 753 | Warning Letter #2 |
| March 2, 2020 | 816 | Warning Letter #2 |
| April 7, 2020 | 875 | Warning Letter #2 |
| May 4, 2020 | 884 | Warning Letter #2 |
| May 15, 2020 | 1,007 | Warning Letter #1 - Firearm Narrative Reports |
| June 1, 2020 | 971 | Warning Letter #2 |
| June 18, 2020 | 1,242 | Warning Letter #1 - Firearm Narrative Reports |
| June 22, 2020 | 484 | Warning Letter #1 - Firearm Narrative Reports |
| July 2, 2020 | 1,001 | Warning Letter #2 |
| July 15, 2020 | 1,101 | Warning Letter #1 - Firearm Narrative Reports |

As of July 24, 2020, ATF has completed review and processing on approximately 28,200 printed pages potentially responsive to the three separate FOIA requests at issue in the underlying litigation. These 28,200 pages have been provided to Plaintiff. ATF does not have an estimate for when it will complete its production, but anticipates it will not finish before 2021.

### Firearm Narrative Reports Responsive to Warning Letter #1 Request

6.  ATF initially anticipated that it would complete its production of all documents responsive to the Warning Letter #1 request on or about November 1, 2019.

7.  On or around August 9, 2019, ATF received by letter an inquiry from the House of Representatives Committee on Oversight and Reform. Generally, the Committee sought information to aid them in evaluating law enforcement efforts as it pertains to firearm violence. Specifically, they asked for information about Federal Firearm Licensees to include:

> All inspection reports by ATF for FFLs during this period [January 1, 2014 through Present] where an industry operations investigator recommended an administrative action or remedial action, including but not limited to, a warning letter, a warning conference, revocation, or nonrenewal, including documents sufficient to show:
>
> a. the name and location of FFL involved;
> b. the recommendations resulting from the inspection;
> c. the violations identified; and
> d. any enforcement actions or other steps taken following the inspection.

8.  Upon receipt of the letter, ATF's Office of Public and Governmental Affairs (PGA) undertook internal discussions to determine what documents were responsive to the Congressional inquiry. The Information and Privacy Governance Division, is within the PGA Directorate and as such, I was privy to those discussions. We noted the overlap of documents responsive to both the Congressional inquiry and the instant case. One set of documents identified as responsive to the Congressional inquiry was Firearm Narrative Reports.  A Firearm Narrative Report is a document

prepared by an Industry Operation Investigator that contains the work performed during the inspection. Generally, it describes the investigative activities performed, the findings, the corrective actions taken, and the recommendation(s) for any further action. The goal of the narrative portion of the report is to document the assigned activity.

9. On or about October 2019, the individuals assigned to process documents associated with the underlying case informed me that no Firearm Narrative Reports had been pulled or processed for this case. However, in re-reviewing Plaintiff's August 7, 2017, FOIA request it was clear that Plaintiff was seeking Firearm Narrative Reports. ATF, through counsel, notified Plaintiff of the oversight and asked if they still sought that sub-set of documents. Ultimately, Plaintiff indicated that it would like to receive all the Firearm Narrative Reports associated with the files they were already being provided. By November 2019, ATF had completed its production of all documents responsive to the Warning Letter #1 request except for the Firearm Narrative Reports. ATF initially expected that it would be able to complete its production of the Firearm Narrative Reports corresponding to Warning Letter #1 within six months of December 2019.

### Information and Privacy Governance Division Resources

10. As background, I have two employees working nearly full time on Plaintiff's FOIA requests and litigations. Upon receipt of the aforementioned Congressional inquiry, my Division was afforded the opportunity to use detailees outside of our Directorate to assist in the response. Specifically, PGA asked groups of employees with some subject matter expertise - Industry Operation Investigators - to assist in pulling responsive Firearms Narrative Reports for processing. This assistance has allowed our FOIA processors to focus on applying exemptions and readying documents for release.

11. ATF initially believed that the additional assistance would permit it to complete its production of the Firearms Narrative Reports within six months of December 2019. The original plan, as discussed with Plaintiff in October 2019, was to have these detailees also process the Firearms Narrative Reports. However, ATF subsequently learned that while the detailees generally understand the records, they have no FOIA experience and this has severely limited the intended benefit. For example, an individual with no FOIA experience does not process the documents consistently nor are they able to identify the subtleties and nuances associated with ATF's (b)(3) exemption. As such, other senior processors in my Division ultimately redo much of the work detailees have performed. This negates any benefit associated with the detailees and actually slows down processing. Additionally, it is difficult to justify the continued use of such resources when we are diverting Industry Operation Investigators from their primary mission, inspecting Federal Firearm Licensees, during recent periods of civil unrest. Nevertheless, ATF has continued to produce First Narrative Reports responsive to the First Warning Letter Request parallel with its production in response to the Congressional inquiry.

12. While ATF would like to provide Plaintiff with more documents, we simply do not have the resources to process additional documents. Since the filing of this litigation, Plaintiff has received roughly 40,000 pages of material responsive to their numerous FOIA requests (litigated and non-litigated). We have made every effort to exceed the monthly mandate of 750 pages already ordered by the court and will continue in this manner. The challenges to reduce our pending request backlog along with the size and complexity of many of these requests, like Plaintiffs; has completely taxed our resources. Diverting additional FOIA assets to this litigation will only delay responses to other requestors and likely result in further litigation elsewhere.

**Impact of Covid-19 and Resource Limitations**

13. The Covid-19 pandemic has negatively impacted ATF FOIA operations substantially. In the months of March and April, productivity sank by more than 30%, as we all struggled to adjust to a maximum telework environment, stay-at-home orders, and home schooling or childcare challenges. While the Division has adjusted, as best we can, to these extraordinary conditions, productivity can still be erratic because of the uncertainties we all face and the challenges associated with working at home and caring for family simultaneously. Yet, despite these challenges and the limitations the Division faces, I am proud of the staff and the adjustments that they have made during these trying times. Staff are working at all hours — often at odd times, late at night, and during weekends — to process requests, complete admin tasks, and ensure that we continue to work to satisfy our obligations to FOIA requesters and to the American taxpayer.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of July, 2020.

_____
Adam C. Siple
Chief, Information and
Privacy Governance Division